IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

SANDEEP SINGH,

          Petitioner,

      v.

UNITED STATES OF AMERICA,

          Respondent.

_____/

1:13-cv-00070-AWI
1:09-cr-00369-AWI

**ORDER REGARDING
PETITIONER'S MOTION TO
VACATE, SET ASIDE OR
CORRECT SENTENCE
PURSUANT TO 28 U.S.C. § 2255**

(Doc. 117, 126, 128)

### I. Introduction

This matter arises from the guilty plea of Petitioner Sandeep Singh ("Petitioner"). Petitioner is currently incarcerated at the Federal Correctional Institution in Lompoc, California ("FCI Lompoc") and is proceeding in this matter *in propria persona*. Petitioner brings a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. Section 2255. Petitioner's complaint alleges the following grounds for relief: 1) a freestanding claim of factual innocence; 2) a claim of Fourth Amendment violation; 3) a claim of prosecutorial failure to disclose exculpatory evidence; 4) a claim that the plea entered was not knowing and voluntary; and 5) a claim of ineffective assistance of trial counsel – misadvising petitioner as to the consequences of his plea. For the following reasons, Petitioner's first, second, third, and fourth claims will be denied. Petitioner's fifth claim will be denied in part. The government will be ordered to respond to a portion of Petitioner's fifth claim.

## II. Background

On September 3, 2009, Drug Enforcement Administration ("DEA") agents traveled to Gilroy, California and established surveillance at a Union 76 gas station. At approximately 12:52 p.m., agents observed a vehicle driven by Michael Ho ("Ho") arrive at the gas station. Shortly thereafter, agents observed Petitioner arrive in a vehicle and park next to Ho. After meeting briefly, Ho and Petitioner got back into their vehicles and traveled in tandem to the Gilroy Outlet Mall.

Agents observed Ho and Petitioner exit their vehicles and engage in a conversation. After a short period of time, Ho entered the driver's side of his vehicle, pulled out a small black plastic bag and gave it to Petitioner. Ho and Petitioner were then observed getting back in their vehicles and leaving the area.

At 1:55 p.m., an officer with the California Highway Patrol (CHP), with the assistance of a DEA agent, conducted a traffic stop on Ho's vehicle. During this contact, Ho gave law enforcement consent to search his vehicle, which revealed ten colored tablets that were concealed in a glove box of the vehicle. Upon questioning, Ho stated the tablets were ecstasy and that they belonged to him. After identifying a picture of Petitioner, Ho stated Petitioner was his sole source of ecstasy and indicated that earlier in the day he had given him approximately $40,000 in payment for a previous ecstasy transaction. Ho further stated that he had given Singh $30,000 three weeks prior and that the total for this previous drug transaction was $70,000.

At approximately 2:24 p.m., a CHP officer initiated a traffic stop on the vehicle driven by Singh. While retrieving registration documents from the glove box, the CHP officer observed a brown paper bag that was wrapped in a plastic bag. When the officer asked Singh what was in the bag, he indicated it contained $30,000. Upon further questioning, Singh stated the money was given to him by his cousin in San Jose, California, and that he intended to use it to purchase a store in Fresno, California. Singh could not provide any further information regarding the store.

Petitioner subsequently indicated the bag contained $40,000. Responding CHP officers utilized a K-9 on Singh's vehicle. The K-9 alerted on the glove compartment, which contained the brown paper bag that was wrapped in a black plastic bag. The K-9 alerted on both the glove

compartment and the money for the presence of narcotics. Singh was arrested, and agents recovered his cellular telephone, which agents determined he had used that day to call Ho.

Petitioner was charged with a single count of conspiracy to distribute MDMA in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C). The indictment contained no quantity or amount allegations. *See* Doc. 22.

A change of plea hearing was held on Monday, September 20, 2010, wherein Petitioner appeared with counsel, Anthony Capozzi, but without the assistance of an interpreter. The Court engaged in a standard plea colloquy with Petitioner and Petitioner answered all of the Court's questions without incident until the Court addressed the factual basis for the plea. Petitioner contended that the Government's statement of the facts was not true an accurate. Petitioner's counsel explained that it was the defense position that Petitioner received only $40,000 as proceeds from the sale of MDMA. With that clarification made and the understanding in mind that the Court would hold an evidentiary hearing to determine extent of the drug trafficking engaged in by Petitioner, Petitioner agreed that the statement of the facts was true and accurate. Based on that limited admission of factual basis Petitioner pled guilty.

A closed evidentiary hearing was held on the issue. The transcript from that hearing has been sealed.

The Court sentenced Petitioner on May 23, 2011. The Court fully reviewed the record, evidence presented at the evidentiary hearing, and presentence report, heard argument from Petitioner and the Government, and determined – for purposes of sentencing - that Petitioner received $70,000.00 at a rate of $1.80 per pill in exchange for 38,888 pills of MDMA. The Court's conclusion was reviewed by the Ninth Circuit Court of Appeals upon direct review, whereupon the Circuit Court indicated, "[t]he district court did not clearly err, because its factual finding regarding the number of ecstasy pills for which [Petitioner] was responsible is supported by a preponderance of the evidence. [citation]" *See* Doc. 108.

The Court determined Petitioner's Offense Level under the United States Sentencing Guidelines to be level 32 and his Criminal History to be Category II. Petitioner is presently

1  committed to the Bureau of Prisons to serve a 168-month sentence which represents the high end
2  of the guideline range. *See* Doc. 86.

### III. Legal Standard

4      Title 28 U.S.C. § 2255 provides, in pertinent part: "A prisoner in custody under sentence
5  of a court established by Act of Congress claiming the right to be released upon the ground that
6  the sentence was imposed in violation of the Constitution or laws of the United States ... may
7  move the court which imposed the sentence to vacate, set aside or correct the sentence." Habeas
8  relief is available to correct errors of jurisdiction and constitutional error but a general "error of
9  law does not provide a basis for collateral attack unless the claimed error constituted a
10 fundamental defect which inherently results in a complete miscarriage of justice." *United States*
11 *v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

12     Courts must "construe pro se habeas filing liberally." *Laws v. Lamarque,* 351 F.3d 919,
13 924 (9th Cir.2003). Under Section 2255, "a district court must grant a hearing to determine the
14 validity of a petition brought under that section, '[u]nless the motions and the files and records of
15 the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Blaylock,*
16 20 F.3d 1458, 1465 (9th Cir.1994), quoting 28 U.S.C. § 2255. The court may deny a hearing if
17 the petitioner's allegations, viewed against the record, fail to state a claim for relief or "are so
18 palpably incredible or patently frivolous as to warrant summary dismissal." *United States v.*
19 *McMullen,* 98 F.3d 1155, 1159 (9th Cir.1996), citations omitted. Mere conclusory statements in
20 a Section 2255 motion are insufficient to require a hearing. *United States v. Hearst,* 638 F.2d
21 1190, 1194 (9th Cir.1980).

22     Under Rule 4(b) of the Rules Governing Section 2255 Proceedings, when a court receives
23 a section 2255 motion, the court must initially screen it, and dismiss it summarily if it plainly
24 appears that the moving party is not entitled to relief. *See United States v. Quan,* 789 F.2d 711,
25 715 (9th Cir.1986). Summary dismissal pursuant to Rule 4 is appropriate only where the
26 allegations of the petitioner are "vague [or] conclusory," "palpably incredible" or "patently
27 frivolous or false." *Hendricks v. Vasquez,* 908 F.2d 490, 491 (9th Cir. 1990) (quoting *Blackledge*
28 *v. Allison,* 431 U.S. 63, 75-76.

1

2                                                **IV. Discussion**

3  **A. Procedural Issues**

4          As a preliminary matter, the Court notes that Petitioner entered a plea of guilty without

5  the benefit of a Federal Rules of Criminal Procedure Rule 11(c) plea agreement. A defendant

6  who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent

7  character of the guilty plea…." Tollett v. Henderson, 411 U.S. 258, 267 (1973); *see United*

8  *States v. Jacobo Castillo*, 496 F.3d 947, 955 (9th Cir. 2007) (After entering a guilty plea, a

9  defendant may not thereafter raise independent claims relating to the deprivation of

10  constitutional rights that occurred prior to the entry of the guilty plea.); *Ronell v. United States*,

11  2014 WL 2504742, *2 (E.D. Cal. 2014) (noting that, although the right to appeal may be

12  preserved in California Superior Courts by simply entering a guilty plea, such is not the case in

13  Federal Court). Accordingly, the scope of Petitioner's brief may not extend beyond issues that

14  affect the voluntariness of the plea.

15          Next, it is well settled that a habeas petition is not a vehicle for challenging the decision

16  of a federal appellate court. *See Feldman v. Henman,* 815 F.2d 1318, 1321–22 (9th Cir.1987).

17  Consequently, a criminal defendant who raises a claim or issue on direct appeal may not again

18  assert that same claim or issue in a section 2255 habeas corpus petition. *See United States v.*

19  *Hayes,* 231 F.3d 1132, 1139 (9th Cir.2000); *US v. Redd,* 759 F.2d 699, 701 (9th Cir.1985). Any

20  contrary rule would contravene the longstanding "law of the case" doctrine, under which "a court

21  generally is precluded from reconsidering an issue that has already been decided by the same

22  court or a high court in the same case...." *Williams v. Harrington,* 511 F. App'x 669, 2013 WL

23  1093019, *2 (9th Cir. Mar.18, 2013) (Hug, Farris, Leavy) (citing *US v. Cuddy,* 147 F.3d 1111,

24  1114 (9th Cir.1998)); *see, e.g., Reed v. Town of Gilbert, Arizona,* 707 F.3d 1057, 1067 FN9 (9th

25  Cir.2013) (prior opinion affirming district court's determination regarding constitutionality of

26  ordinance was the law of the case and precluded reconsideration of the issues determined by that

27  opinion) (citing *Minidoka Irrigation Dist. v. Dep't of Interior,* 406 F.3d 567, 573 (9th Cir.2005))

28  (n.9 omitted).

1    Petitioner argued to the Circuit Court that this Court "erred in calculating the advisory

2    Guidelines range by relying on the testimony of a co-defendant to determine Singh's relevant

3    conduct and to establish his base offense level." Doc. 108 at 2. The Circuit Court held that this

4    Court:

5         did not clearly err, because its factual finding regarding the number of ecstasy
          pills for which Singh was responsible is supported by a preponderance of the

6         evidence. *See United States v. Asagba*, 77 F.3d 324, 325-26 (9th Cir. 1996). The
          district court adequately explained its decision, and the sentence imposed is

7         procedurally sound. *See United States v. Carty*, 520 F.3d 984, 992-93 (9th Cir.
          2008) (en banc).

8

9    Doc. 108 at 2. Accordingly, this Court will not reexamine the issues of whether it erred in relying

10   on co-defendant testimony for a finding of the number of pills or whether the finding was

11   supported by sufficient evidence.

12       Similarly, the Supreme Court has unanimously cautioned that "federal habeas is a guard

13   against extreme malfunctions in the ... criminal justice systems, not a substitute for ordinary error

14   correction through appeal." *Ryan v. Gonzales,* ⎯⎯ U.S. ⎯⎯, 133 S.Ct. 696, 708 (2013); *see*

15   *also Sanders v. U.S.,* 373 U.S. 1, 25 (1963) ("[T]he Court has consistently held that neither

16   habeas corpus nor its present federal counterpart § 2255 is a substitute for an appeal.") (citing,

17   *inter alia, Sunal v. Large,* 332 U.S. 174 (1947)); *Hibbler v. Benedetti,* 693 F.3d 1140, 1148 (9th

18   Cir. 2012) (citing *Harrington v. Richter,* 131 S.Ct. 770, 786 (2011)), *cert. denied,* ⎯⎯ U.S. ⎯⎯,

19   133 S.Ct. 1262 (2013); *US v. Braswell,* 501 F.3d 1147, 1150 (9th Cir.2007) ("[B]oth for federal

20   and state convictions, habeas review is not to substitute for an appeal.") (citing *Bousley v. US,*

21   523 U.S. 614, 621 (1998)); *Huson v. Rhay,* 446 F.2d 861, 862 (9th Cir.1971) ("the writ of habeas

22   corpus is not a substitute for an appeal"); *accord Judkins v. US,* ⎯⎯ F.Supp.2d ⎯⎯, 2013 WL

23   1130484, *2 (E.D.Wis. Mar.18, 2013) ("Petitioner's motion fails.... [H]e procedurally defaulted

24   his claims by failing to directly challenge ... in the court of appeals, the manner in which police

25   collected evidence in his case.").

26       Accordingly, a criminal defendant who could have raised a claim on direct appeal by fails

27   to do so will be found to have procedurally defaulted that claim, and may raise that claim on

28   collateral review "only if the defendant can … demonstrate 'cause'[excusing his procedural

1  default] and actual 'prejudice' [resulting from the claim of error] or that he is 'actually

2  innocent.'"  *Braswell,* 501 F.3d at 1149–50 (citing, *inter alia, Bousley,* 523 U.S. at 622); *United*

3  *States v. Curiel,* 2011 WL 34384434, *3 (2011) *adopted by* 2011 WL 3816283 (E.D. Cal. 2011).

4  "Generally, to demonstrate 'cause' for procedural default, an appellant must show that 'some

5  objective factor external to the defense' impeded his adherence to the procedural rule." *United*

6  *States v. Skurdal,* 341 F.3d 921, 925 (9th Cir.2003). Cause for procedural default is most

7  commonly established by showing governmental interference (*Strickler v. Greene*, 527 U.S. 263

8  (1999)) or ineffective assistance of counsel (*Edwards v. Carpenter*, 529 U.S. 446 (2000)).

9       As to Petitioner's second and third claims for relief, unconstitutional search and seizure

10 and suppression of exculpatory evidence, respectively, he has shown no cause for his failure to

11 raise this claim on direct appeal nor prejudice from the alleged error. The second and third

12 claims recite facts that were known and available to Petitioner at the time of his guilty plea and

13 appeal but were omitted from his direct appeal. *See United States v. Kiles*, 2007 WL 2705236, *6

14 (E.D. Cal. 2007) (*citing, inter alia, Lewis v. United States*, 235 F.2d 580, 581 (9th Cir. 1956) (a

15 violation of the 4th Amendment must be raised on direct appeal)); *Banks v. Dretke*, 540 U.S.

16 668, 692-693 (2004) (*Brady* violation only constitutes cause for delay where evidence is

17 suppressed beyond trial and is unavailable on direct appeal); *see also Cone v. Bell,* 492 F.3d 743,

18 754 (6th Cir. 2007) (in order to establish "cause" under *Brady*, there must be prosecutorial

19 concealment and misrepresentation; the merely failure to disclose by itself is not enough). As

20 will be discussed in Section III(B)(1), *infra*, Petitioner cannot show actual innocence.

21 Accordingly, Petitioner's second and third claims for relief procedurally defaulted when he

22 failed to raise them on direct appeal.

23       Petitioner's fifth claim for relief, ineffective assistance of counsel, is not procedurally

24 defaulted. The procedural default rule does not apply to claims of ineffective assistance of

25 counsel not raised on direct appeal, even if the claims could have been raised on direct appeal.

26 *See*, *e.g., Massaro v. U.S.*, 538 U.S. 500, 504 (2003) ("an ineffective-assistance-of-counsel claim

27 may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have

28 raised the claim on direct appeal").

**B. Merits**

1. Freestanding Factual Innocence

The United States Supreme Court recently recognized – in the context of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 - that "[t]he [Supreme] Court has not resolved whether a prisoner may be entitled to habeas relief on a freestanding actual-innocence claim. *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013) (citing *Herrera v. Collins,* 506 U.S. 390-404-405 (1993) ("'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits")). In this Circuit we have not only assumed that freestanding innocence claims are possible but also have articulated a minimum standard "a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Osborne v. District Attorney's Office for Third Judicial Dist.*, 521 F.3d 1118, 1130-1131 (9th Cir. 2008); *Carriger v. Steward,* 132 F.3d 463, 476 (9th Cir. 1997) (en banc).

In resolving Petitioner's claim, this Court will not decide the open questions surrounding freestanding actual innocence claims. Rather, it will assume, *arguendo*, that such claims are cognizable in the non-capital federal habeas context and will apply the standard set forth in *Carriger*.

Here, Petitioner alleges in his present petition that he only "admitted [to] being in possession of $40,000 of questionable money." Doc. 117 at 5. During the change of plea colloquy, Petitioner objected to factual basis put forth by the government. Petitioner's counsel contended instead that rather than being involved in the handling of controlled substances and $70,000 as alleged, Petitioner actually received only $40,000, which Petitioner knew was proceeds from the sale of ecstasy but never actually handled any ecstasy. *See* Doc. 55 at 10. With that modification made, Petitioner agreed that the statement of facts was true and accurate.

In order for a defendant to be guilty of conspiracy to distribute a controlled substance pursuant to 21 U.S.C. §§ 841(a) and 846 the government must prove: 1) an agreement between two or more persons to distribute a controlled substance; and 2) the defendant joined in the

1  agreement knowing of its purpose and intending to help accomplish that purpose. Model Crim.

2  Jury Instr. 9th Cir. 9.19 (2010); 21 U.S.C. §§ 841(a), 846. Here, defendant admits that an

3  agreement to sell ecstasy existed and that he accepted money with the knowledge that it was

4  proceeds from the sale of ecstasy. Regardless of whether Petitioner accepted more than $40,000

5  or ever physically possessed or distributed drugs, all of which the record would seem to support,

6  Petitioner's admissions in his petition would have been sufficient to find that he was guilty of

7  conspiracy to distribute ecstasy. Accordingly, Petitioner has fallen well short of making the

8  requisite showing that "he is probably innocent" of the offense charged. *Carriger,* 132 F.3d at

9  476. For that reason, Petitioner's motion to vacate based on a freestanding claim of factual

10 innocence will be denied.

11 <u>2. Voluntariness of the Plea</u>

12      Petitioner contends that he did not understand the terms of his plea of guilty due to a

13 language barrier. Petitioner states that he "truly did not know what was being said or that [he]

14 was pleading guilty to $70,000 and drugs." As a preliminary matter, Petitioner did not admit that

15 he received $70,000 in cash or that he distributed ecstasy as part of the factual basis for his plea.

16 Rather, he admitted to accepting $40,000 that he knew to be proceeds from the sale of ecstasy.

17 The factual basis admitted to by petitioner is sufficient to sustain a conviction, as discussed

18 above.

19      "Conclusory allegations which are not supported by a statement of specific facts do not

20 warrant habeas relief." *James v. Borg,* 24 F.3d 20, 26 (9th Cir.1994); *Baumann v. United States,*

21 692 F.2d 565, 571 (9th Cir.1982) (§ 2255 motion) (requiring factually specific allegations). This

22 is so especially in situations where a movant is attempting to attack his plea and the plea

23 colloquy demonstrates knowledge, voluntariness and intelligence. *Blackledge v. Allison,* 431

24 U.S. 63, 73 (1977). The representations of a defendant, his lawyer, and the prosecutor at a

25 [change of plea hearing], as well as any findings made by the judge accepting the plea, constitute

26 a formidable barrier in any subsequent collateral proceeding. *Blackledge,* 431 U.S. at 73-74.

27 Solemn declarations in open court carry a strong presumption of verity. *Blackledge*, 431 U.S. at

28 74.

The Court went through the standard plea colloquy with Petitioner, a high school graduate. *See* Doc. 55. Petitioner responded that he understood all of his rights and vocalized no concerns about his ability to understand the English language. Specifically, Petitioner was informed of the maximum potential sentence of twenty years and a fine of $1 million, ineligibility for federal benefits, and immigration consequences of his plea and indicated his understanding. Doc. 55 at 5. Petitioner was informed that the Court could not determine his sentence until after the presentence report had been prepared and the parties had the opportunity to challenge the reported facts and application of the advisory sentencing guidelines. Petitioner indicated his understanding. Doc. 55 at 6.  The Court read Petitioner the elements of the offense and Petitioner, again, indicated his understanding. Doc. 55 at 8. When the Court inquired as to whether Petitioner agreed with the factual basis as stated by the United States Attorney, Petitioner voiced his disagreement. Doc. 55 at 10. Petitioner's counsel put forth the defense position as to the facts of the case, i.e. Petitioner only received $40,000, and Petitioner admitted that the statement, as modified, was true and correct. Doc. 55 at 11-12.

This claim, rather than disputing the validity of the plea, appears to contend that the Court erred in making a factual finding regarding the amount of money received and number of pills for which Petitioner was responsible. The Ninth Circuit has already determined this issue against Petitioner as discussed in Section IV(A), *supra*. Accordingly, this Court will not reexamine the issue.

Since this claim disputes the voluntariness of the plea in direct contrast to the plea colloquy, *see* Doc. 55, and misstates the facts upon which Petitioner pled guilty, it must be summarily dismissed.

3. Ineffective Assistance of Counsel

Petitioner has identified four alleged errors by counsel for which he seeks relief: failing to properly investigate, failing to file pretrial motions, misadvising petitioner as to the likely consequences of an unqualified plea without an agreement and advising petitioner to reject the plea agreement offered by the government, and failing to advise the court of Petitioner's inability to understand the proceedings. *See* Doc. 117 at 8.

In this case, however, Petitioner cannot assert ineffective assistance of counsel in failing to investigate the case or failing to file pre-trial motions. Petitioner waived his pre-plea ineffective assistance of counsel claim when he entered his guilty plea. *United States v. Lopez–Armenta,* 400 F.3d 1173, 1175 (9th Cir.2005) (it is well-settled that an unconditional guilty plea cures all antecedent constitutional defects), *cert. denied,* 546 U.S. 891 (2005); *United States v. Cortez,* 973 F.2d 764, 767 (9th Cir.1992) (holding that guilty plea precluded defendant from challenging pre-plea selective prosecution claim but not from challenging knowing and voluntary character of his plea because of ineffective assistance of counsel); *United States v. Bohn,* 956 F.2d 208, 209 (9th Cir.1992) (per curiam) (explaining that guilty plea generally waives all claims of a constitutional nature occurring before plea). The Supreme Court has noted:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea....

*Tollett v. Henderson,* 411 U.S. 258, 267 (1973). "[A] guilty plea represents a break in the chain of events which has proceeded it in the criminal process[.]" *Tollett,* 411 U.S. at 267. Thus, challenges to guilty pleas in the federal habeas context are generally limited to two major issues: (1) whether the plea was voluntary and intelligent; and (2) whether the petitioner received constitutionally adequate assistance of counsel with regard to the plea process. See *United States v. Broce,* 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.")

Here, Petitioner, by entering a plea of guilty, waived his right to have this Court review any claims which allege constitutional deprivations that occurred prior to the entry of Petitioner's guilty plea. Petitioner claims that his trial counsel was ineffective in failing to investigate and file

11

1    pre-trial motions related to conduct which occurred prior to Petitioner's plea of guilty. Those

2    pre-plea claims are waived by the guilty plea.

3          Petitioner alleges that counsel advised him to reject a plea agreement from the

4    government that would have recommended a guideline sentencing range between fifty-seven

5    (57) and seventy (70) months. *See* Doc. 117 at 8. Rather than accept that offer, counsel advised

6    Petitioner to plead guilty without the benefit of a plea agreement pursuant to Federal Rules of

7    Criminal Procedure, Rule 11(c). Petitioner asserts that he was advised that if he pled guilty

8    without a plea agreement he would be sentenced to a term of thirty-three (33) months. Petitioner

9    pled guilty without the benefit of an agreement and was sentenced to a term of one hundred and

10   sixty-eight (168) months.

11          To establish a constitutional violation for ineffective assistance of counsel, a § 2255

12   petitioner must show: (1) counsel's representation fell below an objective standard of

13   reasonableness; and (2) there is a reasonable probability that the deficient performance

14   prejudiced the petitioner. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States*

15   *v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005). To prove deficient performance of counsel,

16   Petitioner must demonstrate that her attorney "made errors that a reasonably competent attorney

17   acting as a diligent and conscientious advocate would not have made." *Butcher v. Marquez,* 758

18   F.2d 373, 376 (9th Cir.1985). Courts must indulge in a strong presumption that counsel's

19   conduct falls within the wide range of reasonable professional assistance, and that counsel

20   "exercised acceptable professional judgment in all significant decisions made." *See Strickland*,

21   466 U.S. at 689; *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990). Judicial scrutiny of

22   counsel's performance is highly deferential. *Strickland,* 466 U.S. at 677–678; *Sanders v. Ratelle,*

23   21 F.3d 1446, 1456 (9th Cir.1994). However, "a poor tactical decision may constitute deficient

24   conduct if the defendant [can] overcome the presumption that, under the circumstances, the

25   challenged action might be considered sound … strategy." *Reynoso v. Giurbino,* 462 F.3d 1099,

26   1113 (9th Cir.2003) (quoting *Strickland,* 466 U.S. at 689). The Ninth Circuit has found, in the

27   guilty plea context, "the gross mischaracterization of the likely outcome" of a guilty plea

28   "combined with the erroneous advice on the possible effects of going to trial, falls below the

1  level of competence required of defense [counsel]." *Womack v. McDaniel*, 497 F.3d 998, 1003

2  (9th Cir. 2007).

3        Petitioner claims that his counsel advised him that he would serve only thirty-three (33)

4  months with the Bureau of Prisons if he pled guilty. In order for Petitioner to have received the

5  sentence allegedly predicted by counsel the offense level would have to have been calculated

6  between seventeen (17) and nineteen (19) since Petitioner's criminal history category was set at

7  Level II. From the record, the Court can infer that Petitioner's counsel advised Petitioner to enter

8  a plea of guilty without a plea agreement so counsel could dispute the quantity of ecstasy pills

9  that Petitioner was involved in distributing and claim that Petitioner acted under duress. Doc. 108

10 at 6-8. Specifically, counsel alleged that Petitioner only received a single $40,000 payment

11 relating to this case. In Petitioner's sentencing memorandum to the court, counsel alleged, based

12 on the $40,000 transaction and a price per unit of $1.80, that the ecstasy quantity would equate to

13 2,777 kilograms of marijuana which would yield a base offense level of 32. Doc. 57 at 5.

14 Counsel requested minor role and acceptance of responsibility downward departures which

15 would have resulted in Petitioner's offense level having been lowered to level 28. *See* U.S.S.G.

16 3B.1.2, 3E1.1. Inconsistently, at the sentencing hearing, Defense counsel attempted to persuade

17 the Court that Petitioner was paid at a rate of $10 per pill, representing the street value, rather

18 than $1.80 per pill, the wholesale price. This calculation was based on counsel contention that

19 the money paid to Petitioner was payment for an old debt rather than payment related to a new

20 drug transaction. The debt allegedly arose because a shipment of ecstasy was seized by the Drug

21 Enforcement Agency, for which Petitioner's suppliers held him responsible. Doc. 108 at 9.

22 Accordingly, counsel claimed that the entire amount of the street value was provided to

23 Petitioner rather than just the wholesale price. Under this calculation, the ecstasy quantity would

24 have equated to approximately 500 kilograms of marijuana, which would have yielded a base

25 offense level of 28. *See* U.S.S.G. 2D1.1(c)(6). If downward departures had been granted the

26 adjusted offense level would have been calculated at 24.

27

28

1    According to the government's calculation, Petitioner actually distributed more than

2    $70,000 worth of ecstasy. Under the Government's calculation the quantity would yield a

3    marijuana equivalency of 43,350 kilograms, which would then yield a base offense level of 38.

4    Petitioner's sentencing memorandum further sought a downward departure for coercion

5    and duress based on alleged threats against Petitioner's family. Doc 57 at 5. In order for counsel

6    to indicate to Petitioner that he could serve only thirty-three (33) months, counsel must have

7    anticipated a minimum of a five level downward departure based on coercion and duress. Such a

8    departure, although not unprecedented, was not warranted in this case. Compare Doc 103 at 27-

9    28; with *United States v. Jurado-Lopez*, 338 F.Supp.2d 246, 254 (D. Mass. 2004) (allowing a

10   twelve level downward departure where the defendant was forced to mule drugs by threats of

11   physical violence to her person and her family). In fact, "Mr. Singh was involved in at least six

12   separate drug transactions with Mr. Ho. None of those … were even linked remotely to fear or

13   concern for family, but rather, [were] drug transactions for profit." Doc. 103 at 26; *see* Doc. 103

14   at 27-28.

15   The Court concluded that Petitioner's proposed calculations were not reasonable. Doc.

16   108 at 23. The Court further concluded that there was "certainly … a reasonable basis to

17   determine the total drug quantity as … argued by the Government, and that would result in a

18   base offense level of 38." Doc. 108 at 23-24.

19   According to Petitioner's characterization, counsel's advice that Petitioner plead guilty

20   without an agreement was a poor tactical decision and counsel grossly mischaracterized the

21   likely outcome as evidenced between the great disparity between the projected thirty-three (33)

22   month sentence and actual one hundred and sixty-eight (168) month sentence. Counsel advanced

23   a theory which appears to have been unsupported by the facts.

24   To show prejudice, Petitioner must demonstrate that "there is a reasonable probability

25   that, but for counsel's unprofessional errors, the result of the proceeding would have been

26   different." *Strickland,* 466 U.S. at 694. "In order to show prejudice from ineffective assistance of

27   counsel where a plea offer has lapsed or been rejected because of counsel's deficient

28   performance, defendants must demonstrate a reasonable probability that they would have

14

1  accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri*

2  *v. Frye*, __ U.S. __, 132 S.Ct. 1339, 1409 (2012). The Supreme Court held that in this context

3  the appropriate inquiry is "not … whether the defendant would have proceeded to trial absent

4  ineffective assistance but whether he would have accepted the offer to plead pursuant to the

5  terms earlier proposed." *Missouri v. Frye*, 132 S.Ct. at 1410. The ineffective assistance inquiry in

6  this context further requires that a petitioner show that neither the trial court nor the prosecution

7  would have prevented the offer from being accepted or implemented. *Missouri v. Frye*, 132 S.Ct.

8  at 1410.

9       Here, Petitioner has alleged that, at the advice of counsel, he pled guilty without the

10  benefit of a plea agreement. Petitioner further describes the sentencing range that was proposed

11  by the plea agreement, which amounts to nearly half of the sentence actually imposed. Petitioner

12  has alleged he would have accepted the plea agreement if he had been accurately advised of the

13  likely outcome of his guilty plea. From the record, it appears that the agreement was proposed by

14  the government and remained open at the time that Petitioner entered his plea of guilty without

15  the benefit of an agreement. Since the government appears to have proposed the agreement it is

16  unlikely that it would have prevented the offer from being accepted or implemented. Despite the

17  fact that the sentencing court sentenced Petitioner at the high end of the guideline range, there is

18  nothing in the record that would suggest that a plea agreement would not have been accepted by

19  the court.

20       Based on the face of the record and Petitioner's allegations, the Court cannot make the

21  determination that Petitioner is entitled to no relief as to this portion of his claim. Accordingly, as

22  to his claim of ineffective assistance in plea bargaining, the Court will order the government to

23  file a response and will direct trial counsel to file a response.

24       Petitioner's claim that he was unable to understand what was taking place at the change

25  of plea hearing was addressed in *Section IV(2), supra*.  Since Petitioner actually pled to what he

26  believed that he was pleading to no error resulted. Further, Petitioner was assisted by a translator

27  during the evidentiary hearing to determine the quantity allegation and during sentencing and did

28  not voice any such concerns to the sentencing court.

1

2                                    **V. Order**

3   Accordingly, IT IS HEREBY ORDERED that:

4        1.   Petitioner's Motion to Vacate is DENIED as to claims for relief one through four;

5        2.   Petitioner's Motion to Vacate is DENIED as to claim for relief five except as to

6             Petitioner's claim based on counsel's alleged error in misadvising Petitioner to plead

7             guilty without the benefit of a plea agreement;

8        3.   The Government is ordered to file a response to Petitioner's fifth claim for relief

9             within sixty (60) days of this order. Specifically, the government should address

10            Petitioner's claim of ineffective assistance of counsel in directing Petitioner to plead

11            guilty without the benefit of plea agreement;

12       4.   The Government is directed to submit any proposed plea agreements relating to this

13            case within sixty (60) days of this order;

14       5.   Petitioner's trial counsel is directed to file a declaration within sixty (60) days of this

15            order. Specifically, counsel should address his conversations with Petitioner relating

16            to any discussion of entry of a plea of guilty without a plea agreement, the likely

17            outcome of a trial, and the benefit of any proposed agreement;

18       6.   The Clerk of the Court is directed to serve Petitioner's trial counsel, Anthony

19            Capozzi, with a copy of this order; and

20       7.   The Clerk of the Court is directed to serve Petitioner with a paper copy of this order.

21

22  IT IS SO ORDERED.

23  Dated:  June 17, 2014        _____

24                                   SENIOR  DISTRICT  JUDGE

25

26

27

28

                                       16